# In the United States Bankruptcy Court
## for the
# Southern District of Georgia
### Savannah Division

**F I L E D**
at __11__ O'clock & __21__ min. __A__ M
Date____9-26-07____

Samuel L. Kay, Clerk Ⓒⓐ
United States Bankruptcy Court
Savannah, Georgia

In the matter of:

EUGENE A. THORNES

          *Debtor*

)
)
)
)
)

Chapter 13 Case

Number <u>07-41166</u>

### MEMORANDUM AND ORDER
### ON MOTION TO IMPOSE STAY

Debtor, who has had two prior Chapter 13 cases dismissed within the past year, filed a new case on August 1, 2007. Because it is his third case within a year, no automatic stay arose upon his filing as a matter of law. Accordingly, he filed this Motion to Impose the Automatic Stay under 11 U.S.C. § 362(c)(4)(B). Upon consideration of the record, I will deny that Motion for the reasons that follow.

### FINDINGS OF FACT

Debtor purchased a 2004 Kia automobile on December 3, 2004 for $19,402.01 with payments of $451.31 per month starting in January 2005. Debtor financed the purchase of the 2004 Kia through National Auto Finance ("Creditor").

Debtor filed Chapter 13 bankruptcy case No. 05-40881 on April 4, 2005 ("Case 1"). At that time, Debtor was employed by Chatham Area Transit as a bus driver with income of $32,000.00 to $34,000.00 per year. In September 2006, Debtor was rendered

unable to work because of a problem with his eyesight that was caused by diabetes. As a result, he had no income until he began receiving disability income of about $1,500.00 per month in November 2006. Because of this interruption and reduction in income, Debtor fell behind on his Chapter 13 payments and Trustee filed a motion to dismiss in March 2007. Since Debtor was not able to cure the deficiency (the payments would increase to over $600.00 per month from the original payments of $534.00 per month), Debtor filed a voluntary dismissal on May 15, 2007, hoping to propose a plan with a more affordable payment. Case 1, Dckt. No.62.

On May 15, 2007, Debtor filed Chapter 13 case No. 07-40709 ("Case 2") with a proposed payment of $385.00 per month. Creditor held a secured claim on Debtor's 2004 Kia automobile in an amount which had been reduced but not paid in full during Case 1. Debtor valued Creditor's collateral at $9,100, an amount which he contends "was higher than the NADA retail on the Debtor's 2004 Kia, and was based primarily on the balance due on the lender's secured claim in the first case." Case No. 07-41166 (Case 3), Dckt. No.8, p.1 (August 1, 2007). Debtor made one payment of $354.59 in ten weeks under Case 2.

Creditor filed an objection to confirmation of the plan in Case 2, asserting that it was entitled to fully secured status because the 2004 Kia was purchased 894 days prior to filing Case 2. Case 2, Dckt. No. 18 (May 22, 2007). Pursuant to a portion of 11 U.S.C. § 1325, commonly referred to as the "hanging paragraph," Creditor asserted that it was entitled to an allowed secured claim in the amount of $21,509.62. The relevant portion of

§1325 provides in essence that debt which is secured by a motor vehicle incurred within 910 days prior to the date of filing the petition must be paid in full. Debtor acknowledged that Creditor was correct and, because he could not afford the higher payments to fund this fully secured claim, filed a voluntary dismissal on July 31, 2007. Case 2, Dckt. No. 31.

After dismissing Case 2, Debtor filed case No. 07-41166 on August 1, 2007 ("Case 3"), well after the 910-day period had run. Debtor again proposed to value Creditor's collateral at $9,100.00 with plan payments of $385.00 per month. Debtor now seeks an order imposing the automatic stay pursuant to 11 U.S.C. § 362(c)(4)(B). Because of the two prior cases, Debtor must overcome a presumption that this case was not filed in good faith by clear and convincing evidence. 11 U.S.C. § 362(c)(4)(D).

Debtor argues that under my decision in Robinson v. Country Home Loans (In re Robinson), Ch. 13 Case No. 05-43319, Adv. No. 05-4069 (S.D.Ga. December 29, 2005)[hereinafter Robinson], this Court should look to a "totality of circumstances" in determining whether Debtor has overcome the presumption by clear and convincing evidence. Debtor further argues that this Court should broadly interpret the "totality of circumstances" test, and find his financial situation adequate to fund a plan since, in addition to his disability income, he is receiving $185.00 per month in food stamps, has family members that will help him out if he needs to make payments, and has a potential increase in income to $2,250.00 if he is successful in his application for Social Security benefits. Debtor points out that Case 1 was dismissed because he lost his job due to a disability and

that Case 2 was not dismissed because of his lack of payments but because of his attorney's misinterpretation of the Code. Case 3, Dckt. No. 31, p.2-3.

In opposition, Creditor makes three arguments. First, Creditor argues that the proposed plan payment of $385.00 per month fails the feasibility test because Debtor is only receiving about $1,500.00 per month in disability income and $262.00 in food stamps. Thus Debtor's budget will not be sufficient to pay the $685.00 mortgage, $125.00 electric bill, $650.00 in food, $140.00 on insurance on both cars, $100.00 in medical and dental expenses, $158.00 in transportation expenses (not including car payments), $50.00 in clothing, and an unspecified amount in general support of his three children and his unemployed spouse. Schedule J reports a monthly income of $2,395.00 and average monthly expenses of $2,010.40, an amount which arguably leaves an insufficient amount for the proposed payments and for emergency expenses. Case 3, Dckt. No.33, p. 3; Dckt.No. 1, Schedules I and J. This contention is supported by the fact that Debtor received a $6,000.00 settlement for a personal injury in 2006, and Debtor has spent part of this money, in addition to his current income, to pay all his bills.

Second, Creditor points out that like the debtor in Robinson, Debtor's first case ended because Debtor was on disability and was receiving only $1,500.00 a month. Now Debtor is still on disability and receiving $1,500.00 a month. Thus Creditor argues that Debtor's financial circumstances have not "substantially" changed.

AO 72A
(Rev. 8/82)

4

Third, Creditor argues that Debtor's only reason for filing this third case is to circumvent the 910-day requirement and this is evidence of bad faith.

For the following reasons, I conclude that Debtor has not made the requisite showing by clear and convincing evidence that there has been a "substantial change" in circumstances since either of the prior cases were dismissed that would lead this Court to conclude Debtor's plan would be fully performed. The presumption imposed by Section 362(c)(4)(D) on Debtor has therefore not been overcome.

## CONCLUSIONS OF LAW

**1. Debtor is presumed not to have filed in good faith and that presumption has not been overcome by clear and convincing evidence.**

According to § 362(c)(4)(A)(i), the automatic stay does not go into effect upon a debtor's filing a case if the debtor had two or more pending bankruptcy cases within the previous year. Since Debtor's first bankruptcy case was dismissed in May 2007 and his second bankruptcy case was dismissed on July 31, 2007, this section has been triggered, and upon the filing of Debtor's third case, there is no automatic stay in place.

However, the Code allows the imposition of a stay under certain circumstances. Within 30 days of the filing of the latest case, a party in interest may ask the court to order the stay to take effect "after notice and a hearing, *only if* the party in interest *demonstrates* that the filing of a later case is in good faith as to the creditors to be stayed."

11 U.S.C. § 362(c)(4)(B)(emphasis added).

   In demonstrating that the filing was in good faith, a debtor must overcome a statutory presumption that the latest case was not filed in good faith by clear and convincing evidence. <u>Id.</u> § 362(c)(4)(D). As I stated in <u>Robinson</u>, "'it is as though evidence has already been presented establishing that the case was not filed in good faith. If no further evidence is presented by the Debtor, the only evidence the Court has is the presumption.'" <u>Robinson</u>, *supra* at 5 (*quoting* <u>In re Montoya</u>, 333 B.R. 449, 457 (Bankr.D.Utah 2005)). The court in <u>Montoya</u> defined clear and convincing evidence as "[the] 'weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction without hesitancy, of the truth of the precise facts of the case.'" <u>Montoya</u>, 333 B.R. at 457 n.12 (*quoting* <u>In re Charles</u>, 332 B.R. 538, 542 (Bankr.S.D.Tex. 2005)).

   The Code does not provide any guidance on how a debtor can rebut this presumption. I concluded in <u>Robinson</u> that "the significant body of precedent guiding the 'good faith' inquiry in pre-BAPCPA cases is controlling." <u>Robinson</u>, *supra* at 5 (*citing* <u>In re Montoya</u>, 333 B.R. at 457). Prior to BAPCPA, the Eleventh Circuit Court of Appeals applied a "totality of circumstances" test in analyzing "good faith." <u>Jim Walter Homes, Inc. v. Saylors (In re Saylors)</u>, 869 F.2d 1434, 1438 (11th Cir. 1989); *see also* <u>In re Shelton</u>, 370 B.R. 861, 867 (Bankr.N.D.Ga.2007)(finding that "[o]ur circuit has also continued to use the

totality-of-the-circumstances [test].   Likewise, under BAPCPA, the totality-of-the-circumstances approach [in analyzing good faith] appears to remain a relevant inquiry.").

Determination of "good faith" is more of an art than a science.  As the Eleventh Circuit said, "[b]roadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose or spirt of [the chapter] in the proposal." Kitchens v. Ga. R.R. Bank and Trust Co. (In re Kitchens), 702 F.2d 885, 888 (11th Cir. 1983); *see also* Deans v. O'Donnell (In re Deans), 692 F.2d 968, 972 (4th Cir. 1982); *see also* In re Vick, 327 B.R. 477, 486 (Bankr.M.D.Fla. 2005) ("the guiding principle is whether the debtor proposed his Chapter 13 plan with a sincere intent to repay, to the best of his ability, the claims of his creditors, or, instead, whether the Chapter 13 filing was an attempt to defer or avoid the claims of legitimate creditors.").

To guide this analysis, the Eleventh Circuit in Kitchens articulated a non-exclusive list of factors which could be considered. 702 F.2d at 888-89. Many of these factors are seldom if ever in issue.  However, the debtor's motivation and sincerity, ability to earn, frequency of filing, pre-petition dealings with creditors, substantiality of repayment, and nature of debt including its potential non-dischargeability, remain central. Id.; *see* In re Saylors, 869 F.2d at 1437-38; *see also* In re Hale, 65 B.R. 893, 896-97 (Bankr.S.D.Ga. 1986)(focused on the substantiality of payment, duration of the plan, dealings with creditors, and the debtor's income and expenses in analyzing "good faith" under Section 1325.); *see also* In re Sellers, 285 B.R. 769, 775-77 (Bankr.S.D.Ga. 2001) (primary purpose of Chapter

13 was to pay minimal dividend on a claim which was previously ruled nondischargeable in Chapter 7, debtors had a pattern of bad faith dealings with creditor, and debtors' health and financial circumstances did not exculpate their earlier conduct.); *see also* <u>In re Hurt</u>, 369 B.R. 274, 279-82 (Bankr. W.D. Va. 2007)(examined substantiality of repayment, nature and amount of unsecured claims, past filings of the debtor, debtor's financial situation, and pre-petition dealings with creditors.)

As this discussion illustrates, pre-BAPCPA authority clearly examined good faith utilizing both objective and subjective criteria. In this context, BAPCPA created a new presumption that a case was not filed in good faith if:

> there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under this title, or any other reason to conclude that the later case will not be concluded . . . with a confirmed plan that will be fully performed.

> 11 U.S.C. § 362(c)(4)(D)(i)(III)

As I ruled in <u>Robinson,</u> this subsection creating the presumption is in a sense superfluous because for it to apply, the restriction on the automatic stay and the presumption have also been triggered solely because of the multiple filings. Since this section appeared to be unnecessary to trigger the presumption, I held in <u>Robinson</u> that proving a substantial change must have been intended by Congress as an additional factor in the totality of circumstances test. <u>Robinson,</u> *supra* at 8.

In facing the same dilemma, my colleague, The Honorable John S. Dalis, ruled that § 362(c)(4)(D) supersedes rather than supplements the <u>Kitchens</u> factors. <u>In re Whitaker</u>, 341 B.R. 336, 346 (Bankr.S.D.Ga. 2006). I respectfully disagree with my colleague based on the language of the statute and contrary persuasive opinions: "Congress was presumptively aware of such [prior] case law when it used the term [good faith] in BAPCPA. It has long been the rule that absent clear Congressional intent to the contrary, judicial interpretations of prior law are determinative when concepts, words, or statutory sections are adopted in an amended law on the same subject." <u>In re Montoya</u>, 333 B.R. at 457(*citing* <u>Nationwide Mut. Ins. Co. v. Darden</u>, 503 U.S. 318, 322, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992)("[w]here Congress uses terms that have accumulated settled meaning under the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.")).

On reflection, however, I do agree with <u>Whitaker</u> that § 362(c)(4)(D)(i)(III) "does not simply state the various circumstances that trigger a presumption of bad faith . . . . it also indicates how those presumptions may be rebutted." <u>In re Whitaker</u>, 341 B.R. at 345. "[T]he chief means of rebutting the presumption of bad faith requires the movant to establish 'a substantial change in the financial or personal affairs of the debtor . . . or any other reason to conclude' that the instant case will be successful." <u>Id</u>.

Therefore, to rebut the presumption, Debtor must establish a "substantial change" in his financial condition since the prior case that is sufficient to conclude that the

current case can both be "confirmed" and "fully performed." This showing has three distinct elements: (1) proof of substantial change in Debtor's financial condition since the prior case, a new and purely objective test; (2) the change will result in a case which can be "fully performed," also an objective test; and (3) the change will result in a case which can be "confirmed," which incorporates all the elements of § 1325, including the subjective and objective pre-BAPCPA good faith "totality of circumstances" test.

Thus, examination of good faith which was formerly in issue only at confirmation, is now advanced to the inception of the case in order to obtain imposition of the stay under Section 362(c)(4). Since a debtor is presumed, because of the previous filings, not to have filed in good faith, the stay cannot be imposed if the debtor fails to separately establish all three elements by clear and convincing evidence: (1) the new BAPCPA "substantial change" element; (2) the feasibility element; and (3) the "confirmability" element which follows pre-BAPCPA precedent. In other words, proof of "substantial change" is not merely another factor in the "totality of circumstances" analysis but a new, independent objective threshold test for imposition of the stay.

Ordinarily, it is necessary for a debtor to first prove the objective element before a court proceeds to examine the subjective element. *See* In re Charles, 334 B.R. at 218 ("in cases addressing a debtor's good faith in filing a petition or plan, the subjective analysis is generally performed only upon a determination that the debtor first establishes objective good faith."); *see* Robinson, *supra* at 11-12 (stating that the debtors "appear sincere, hard-

working, and earnest in their desire to make yet another effort to reorganize their finances and save their home. Their previous efforts failed, however, and there is insufficient evidence to demonstrate that anything has fundamentally changed."); *see also* Elmwood Dev. Co. v. Gen. Elec. Pension Trust (In re Elmwood Dev. Co.), 964 F.2d 508, 512 (5th Cir. 1992) (dismissing the debtor's petition as not filed in good faith and concluding that the court did not need to "entertain and give dispositive weight to testimony of the subjective state of mind" when it first determined that the case did not meet an objective good faith standard); *see also* In re McCormick, 127 B.R. 410, 415 (N.D.Ill. 1991). Analyzing the objective factor first is necessary because:

> . . . [T]he Court has difficulty conceiving of a case that could be filed in good faith without a reasonable probability of success. Put simply, it cannot be good faith to attempt to stay a creditor from proceeding if the debtor does not have a meaningful chance of success in the bankruptcy case. Second, the Court is influenced by the language contained in § 362(c)(3)(C)(i)(III)(aa)-(bb), which requires an analysis of the likelihood of success on the merits of the new case. Third, § 362(c)(3) and (c)(4) were apparently adopted to address a problem that posed significant concern under the prior version of the Bankruptcy Code . . . . By adopting § 362(c)(3) and (c)(4), Congress appears to have chosen to limit the stay in repeat cases to those with a meaningful chance of success in the newly filed case.
>
> In re Charles, 334 B.R. at 218-19

Turning to the present case, a review of Debtor's performance in his two prior cases and the projections for Case 3 reveals that Debtor has not proven that there has

been a "substantial change in the financial or personal affairs of the debtor since the previous case [such] that . . . a confirmed plan . . . will be fully performed." The facts supporting this conclusion include the following.

First, Debtor's budget has not improved since the prior case. Debtor has been unable to explain how his reliable sources of regular income - $1,500.00 disability income and $262.00 in food stamps - are sufficient to fund the $385.00 payments to the trustee, $685.00 mortgage, $125.00 electric bill, $685.00 per month for food, $140.00 per month for insurance on both cars, $100.00 in medical and dental expenses, $158.00 in transportation expenses (not including car payments), $50.00 in clothing, and an unspecified amount for support of his three children and his unemployed spouse. Case 3, Dckt. No.1, Schedules I and J.

Second, Debtor has not proven that projected monthly income of $2,395.00 and average monthly expenses of $2,010.40 are either realistic or sufficient to pay all his expenses. First, Debtor admits that he has to use the proceeds of his personal injury award in order to support his family each month and has not provided any explanation of what will happen once this money is gone. Second, although Debtor claims that he has family members who will help him, a projected tax refund of $4,800.00 per year, and a potential increase in income to $2,250.00 if he is successful in his application for Social Security benefits, these extra funds are too uncertain and speculative to meet the clear and convincing standard.

For the foregoing reasons, I conclude that Debtor has not made the requisite showing by clear and convincing evidence of a substantial change in circumstances since either of his prior cases were dismissed which will result in a confirmable, successful plan.

### 2. Debtor's attorney's error does not affect the result.

Debtor's attorney concedes that Debtor's predicament was caused in part by an unfortunate misinterpretation of the Code by his counsel. Had counsel realized the 910-day rule was an issue in Case 2, he could have simply delayed filing until the 910 days passed. As a result of this error, Debtor argues that Case 2 should be ignored and the Court should not infer bad faith on Debtor's part as a result of this third case because it was necessitated by his attorney's mistake. I conclude that this does not change the result.

Having a case dismissed and then re-filed due to attorney error certainly supports the notion that Debtor has no subjective bad faith or malice, but even assuming that Debtor has good faith motives and a sincere intent to repay his creditors, he must first prove that Case 3 meets the objective good faith standard in order to gain the benefit of the automatic stay.

Because I conclude that Debtor did not prove that there has been substantial change in circumstances by clear and convincing evidence, it is not necessary to examine Debtor's motivation, sincerity and subjective good faith or the impact of counsel's acts in Case 2. The presumption imposed by Section 362(c)(4)(D) on Debtor has not been

overcome.

## **O R D E R**

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that the Debtor's Motion to Impose Automatic Stay is DENIED.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 26th day of September, 2007.